IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ILDEFONSO BENITEZ,           )     CIV. NO. 13-00668 SOM/RLP
                             )
            Plaintiff,       )     ORDER GRANTING DEFENDANT'S
                             )     MOTION TO DISMISS
       vs.                   )
                             )
UNITED STATES OF AMERICA,    )
                             )
            Defendant.       )
_____)


### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

        Plaintiff Ildefonso Benitez is a federal prisoner
incarcerated at the Federal Correctional Institution in Oakdale,
Louisiana ("FCI-Oakdale").  Plaintiff alleges that, while he was
incarcerated at the Federal Detention Center in Honolulu ("FDC-
Honolulu"), prison staff negligently assigned him to an upper
tier cell and upper bunk on or about March 7, 2010, despite their
knowledge that he had a seizure condition.  Benitez had a seizure
and fell that same day.  He alleges that this upper cell and bunk
assignment is the direct cause of the injuries he sustained
during that seizure.  He seeks relief under the Federal Tort
Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

        Before the court is the United States of America's
Motion to Dismiss Benitez's action for his failure to timely
exhaust FTCA administrative tort remedies with the Federal Bureau

of Prisons ("BOP") within two years of the accrual of his claims. Def.'s Mot., Doc. No. 10. The United States claims that Benitez's failure to exhaust these remedies deprives the court of subject matter jurisdiction. Benitez has opposed the Motion, Doc. Nos. 16 and 25, and the United States has replied, Doc. No. 20. Defendant's Motion is GRANTED because, although exhaustion is not an issue of subject matter jurisdiction, *see Wong v. Beebe*, 732 F.3d 1030, 1033-34 (9th Cir. 2013), it is clear that Benitez failed to exhaust required administrative remedies before commencing this action and is not entitled to equitable tolling of the statute of limitation.

## I. <u>LEGAL STANDARDS</u>

"The Prison Litigation Reform Act ["PLRA"] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)); *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 n.4 (2002)). "'[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002) (quoting *Porter*, 534 U.S. at 532). Exhaustion is mandatory, and "unexhausted claims cannot be brought in court."

*Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (*per curiam*). Even if the prisoner seeks monetary or other relief that is unavailable through the grievance system in question, the prisoner must still exhaust all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

In addition, the PLRA requires that a prisoner "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. This requirement is intended to "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle*, 534 U.S. at 525).

Section 1997e(a) does not impose a pleading requirement, but provides an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look

beyond the pleadings and decide disputed issues of fact.  *Wyatt*,
315 F.3d at 1119-20.[1]

**A.        BOP Administrative Remedy Procedures**

"The purpose of the Administrative Remedy Program is to
allow an inmate to seek formal review of an issue relating to any
aspect of his/her own imprisonment."  28 C.F.R. § 542.10(a).  The
BOP grievance procedure is set forth in 28 C.F.R. § 542.13-15.
Inmates must first informally present their complaints to prison
staff using a BP-8 form.  *Id.* at § 542.13(a).  If the informal
complaint is not resolved, the inmate may make an "Administrative
Remedy Request" to the Warden using a BP-9 form.  The BP-8 and
BP-9 forms are linked; both refer to a complaint arising out of
the same incident, and both forms must be submitted within twenty
calendar days of the date of that incident.  28 C.F.R.
§ 542.14(a).  Extensions of time are available upon a showing of
a valid reason for delay, including incapacity, extended transit,
or delays in informal resolution.  *See* 28 C.F.R. § 542.14.  If
the Warden renders an adverse decision, the inmate may appeal to
the Regional Director within twenty calendar days using a BP-10
form.  *Id.* at § 542.15(a).  If the inmate is still dissatisfied,
he may appeal to the General Counsel (Central Office) within
thirty calendar days from the date of the Regional Director's

---

[1] Benitez was given notice on how to defend against such a
motion and an opportunity to supplement his response.  *See* Doc.
Nos. 23; *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012).

4

response. *Id.* The Regional Director has thirty calendar days to respond, and the General Counsel has forty calendar days to address the inmate's concern. *Id.* at § 542.18.

"If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." *Id.* at § 542.10(c). No administrative remedy appeal is considered to have been fully exhausted until it is decided by the Central Office. 28 C.F.R. § 542, *et seq.* That is, to fully exhaust, a prisoner must appeal through all appropriate levels to the last level of review. *See Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010); *Nigro v. Sullivan*, 40 F.3d 990, 993 (9th Cir. 1994) (holding prisoner's failure to file timely appeal at highest level of review constituted procedural default of his claim)

**B.      Administrative Exhaustion Under the FTCA**

The FTCA requires timely exhaustion of administrative remedies with the appropriate federal agency before commencement of a tort action against the government. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Under 28 U.S.C. § 2401(b), a plaintiff bringing an FTCA claim against the United States must first file an administrative claim with the appropriate agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). "Otherwise, it is 'forever barred.'"

*Gallardo v. United States*, 2014 WL 2462804, at \*4 (9th Cir. June
3, 2014); *see also Wong v. Beebe*, 732 F.3d 1030, 1033-34 (9th
Cir. 2013) (*en banc*) (holding that FTCA claims are non-
jurisdictional and subject to equitable tolling). A claim
accrues under the FTCA "once a plaintiff becomes aware of [his]
injury and its immediate cause." *Id.* (citing *United States v.
Kubrick*, 444 U.S. 111, 122 (1979)). In *Kubrick*, the Supreme
Court explicitly declined to "hold that Congress intended that
'accrual' of a claim must await awareness by the plaintiff that
his injury was negligently inflicted." *Id.* at 123.

## II.  BACKGROUND

On or about March 4, 2010, Benitez, then a pretrial
detainee, informed FDC-Honolulu medical personnel that he had
been diagnosed with a seizure condition and had been taking
seizure medication since this diagnosis. *See* Def.'s Ex. J, BOP
Clinical Notes, Doc. No. 10-12, PageID #97, #99. Benitez was
unsure when his last seizure had occurred. Benitez and his
attorney also alerted FDC staff to his condition before he
arrived at the prison. Compl., Doc. No. 1, PageId #3.

On March 7, 2010, when Benitez was being moved to his
new cell, he again told FDC Honolulu staff about his seizure
condition and requested a ground-floor cell and lower bunk to
reduce his risk of injury in the event he had a seizure. *Id.*,
PageID #4. Benitez alleges that FDC-Honolulu staff ignored his

request and assigned him to a second-floor cell and an upper bunk, despite knowledge of his condition and his alleged lack of medication. *Id.* (stating their "conduct occurred despite being notified that [he] had seizure[s], and [he was] without a single medication").

Benitez claims that after FDC-Honolulu staff left his cell, he suffered a "crippling seizure" and fell from the top bunk. *Id.* He says other inmates "rushed [him] out of the cell, with no staff around, [and he] fell again."[2] *Id.* Benitez hit his head on the stair rail and lost consciousness, but other inmates allegedly prevented him from falling over the rail. *Id.* Benitez claims that FDC-Honolulu staff failed to immediately render him aid, although he "was rushed to the Hospital Emergency." *Id.* PageID #6. Benitez sustained injuries to his head and right eye, and remained hospitalized for five days. *Id.* at PageID #6; *see also* Def.'s Ex. J, Doc. No. 10-12, PageID #104 (noting Benitez had a laceration over his right eye). When his cell was searched immediately after the incident, Phenytoin[3] and ibuprofen were found in his cell, but Benitez was unable to

---

[2] In his Supplemental Response, Benitez says he fell from his upper bunk and "also fell the following morning while tr[y]ing to walk down to the inmate common area." Pl. Supp. Br., Doc. No. 25, PageID #156-57.

[3] "Phenytoin is used to control certain types of seizures." Medline Plus, National Institutes of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682022.html.

recall if he had taken this medication before his seizure. *See* Def.'s Ex. J, PageID #102. He complains that his head injury "continues to rob [him] of peace of mind" and he "suffers excruciating frequent pain in [his] right eye." Compl., Doc. No. 1, PageID #6.

On September 2, 2010, approximately six months after his fall, Benitez pled guilty in *United States v. Benitez*, Cr. No. 10-00091(3) JMS. *See* Doc. Nos. 89, 90. During the course of his guilty plea, the following exchange took place:

> THE COURT: And have you taken any medication, alcohol, or drugs of any kind today?
>
> THE DEFENDANT: Medication.
>
> THE COURT: All right. And this is for -- prescribed to you by a doctor, is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And for what kind of ailment?
>
> THE DEFENDANT: Seizures.
>
> THE COURT: All right. And is it -- *and does it prevent you from making decisions or making it difficult for you to understand what's going on?*
>
> THE DEFENDANT: *No.*
>
> THE COURT: All right. And have you been treated recently for any type of mental illness or addiction to narcotic drugs of any kind?
>
> THE DEFENDANT: No.
>
> THE COURT: Mr. Edwards, to the best of your

knowledge, is your client competent to enter
a valid plea today?

MR. EDWARDS: Yes.

*Id.*, Tr. of Withdrawal of Guilty Plea, September 2, 2010, Doc.
No. 157, PageID #512-13 (emphasis added). Magistrate Judge
Leslie Kobayashi found that Benitez was fully competent and that
he was knowingly, intelligently, and voluntarily pleading guilty.
*See* Report and Recommendation, Doc. No. 91. United States
District Judge J. Michael Seabright accepted Benitez's guilty
plea on September 27, 2010. Doc. No. 93.

Benitez remained at FDC-Honolulu until on or about June
8, 2011. *See* Def.'s Ex. H, Doc. No. 10-10. He was temporarily
housed at the Federal Transfer Center in Oklahoma City. *Id.* On
or about July 1, 2011, he was transferred to FDC-Oakdale. On
August 23, 2012, he was assigned to FCI-Oakdale. *Id.*

Twenty-seven months after his fall, on June 21, 2012,
Benitez filed a grievance at FDC-Oakdale regarding his March 7,
2010, fall at FDC-Honolulu. Def.'s Ex. K, Doc. No. 10-13, PageID
#108. It was rejected on the ground that Benitez had failed to
pursue informal resolution while he was still incarcerated at
FDC-Honolulu. *See id.; see also* Doc. No. 10-4, Def.'s Ex. B,
PageID #76-77. On July 17, 2012, Benitez wrote the FDC-Honolulu
Warden to attempt to grieve his claim. *Id.* He claimed that his
placement on the top tier and in an upper bunk constituted
deliberate indifference to his safety in violation of the Eighth

Amendment; he sought $1 million in damages. *Id.*, PageID #77.

The Warden responded on August 24, 2012, by explaining that the BOP's grievance program does not provide monetary relief for prisoners' complaints. He told Benitez to file a claim under the FTCA, and provided him with the information he needed to begin FTCA administrative procedures.[4]

Approximately seven weeks later, on or about October 14, 2012, Benitez completed an FTCA administrative tort claim form; it was mailed on October 18, and received on October 19, 2012. *Id.* PageID #72-75. On May 29, 2013, the BOP denied Benitez's FTCA administrative tort claim. *See* Def.'s Ex. E, PageID #85. The BOP found that Benitez's claim had accrued on March 7, 2010, and was therefore untimely because it was submitted more than two years later. *See* 28 U.S.C. § 2401(b).

On June 8, 2013, Benitez requested reconsideration of this decision. Doc. No. 10-8, Def.'s Ex. F. He alleged that, although he continued to be treated after his injury on March 7, 2010, his right eye only began to cause him pain on or about May 23, 2012. *Id.* He says "[a]t that point, [he] 'knew both the fact of [in]jury and its immediate physical cause.'"[5] *Id.,*

---

[4] Benitez apparently pursued all levels of the BOP grievance program, and his claim was ultimately rejected on January 14, 2013. *See* Def.'s Ex. K, Doc. No. 10-13, PageID #108.

[5] Benitez also attests, that he only "became conscious of my health problem as a consequence of my accident" after he arrived
(continued...)

PageID #87.  On June 21, 2013, the BOP denied Benitez's request for reconsideration and informed him that the May 29, 2013, denial of his claim was the final determination.  Def.'s Ex. G. The BOP.

Three months later, on September 9, 2013, Benitez, proceeding pro se, moved for a reduction in his sentence in CR. No. 10-00091 JMS, pursuant to Rule 35 of the Federal Rules of Criminal Procedure.  *Id.*, Mot. for Specific Performance, Doc. No. 158.  On September 27, 2013, the trial court denied Benitez's Motion.  Doc. No. 165.  On October 25, 2013, he appealed.  Doc. No. 166.  On June 9, 2014, the Ninth Circuit Court of Appeals dismissed the appeal as untimely.  Doc. No. 175.

On November 14, 2013, Benitez signed the Complaint in the present action.  *See* Compl., Doc. No. 1.  It was filed in the District Court for the Eastern District of California on November 21, 2013, and transferred to this court on December 3, 2013. Doc. No. 4.  Benitez seeks relief under the FTCA, alleging that Defendant negligently assigned him an upper tier cell and a top bunk despite knowledge of his seizure condition and his potential for injury.

---

[5](...continued)
at FDC-Oakdale "on August 23, 2012,"  Pl.'s Aff., Doc. No. 17,
PageID #137.  Yet he originally asserted venue in the Eastern
District of California because his "Medical Conditions Originated
in this Area."  Compl., Doc. No. 1, PageID #2.

# III. <u>DISCUSSION</u>[6]

## A.   The Parties' Arguments

The Government argues that Benitez's claim accrued on March 7, 2010, the date that he fell and injured himself at FDC-Honolulu.  It asserts that, because Benitez failed to present an administrative tort claim until October 14, 2012, approximately two years and seven months after he was aware of his injury, and articulates no justifiable basis for equitable tolling of the statute, his claims are time-barred.

Benitez concedes that he filed his administrative tort claim more than seven months late.  He asserts, however, that he is entitled to equitable tolling of the statute of limitation because he was over-medicated by BOP health care providers for no less than "one year and a half" after the March 7, 2010, incident.  Pl.'s Response, Doc. No. 16, PageID #118.  Benitez argues that this alleged over medication caused "a noticeable dizziness and grogginess that affected him in his ability to be conscious of reality and time." *Id.*  He claims that "it was not until August, 2012, . . . that he was able to be conscious about his medical situation and able . . . to diligently begin his

---

[6] Neither party addresses whether Benitez exhausted the BOP's prison grievance procedure, set forth at 28 C.F.R. § 542.13–15, and the court declines to address this issue.

administrative remedy."[7]  *Id.*  He also alleges that his lack of

English proficiency prevents him "from complying and/or timely

respond, present and/or adequately put forward documentation that

is required and n[e]cessary in a legal matter like the present

one."  Pl.'s Aff., Doc. No. 17, PageID #137-38.

**B.        Equitable Tolling**

As noted, a cause of action under the FTCA generally

accrues when "a plaintiff becomes aware of [his] injury and its

immediate cause."  *Gallardo*, 2014 WL 2462804, at *4; *Kubrick*, 444

U.S. at 122.  The two-year time limit for filing an FTCA

administrative claim pursuant to 28 U.S.C. § 2401(b) may be

subject to equitable tolling, however.  *See id.*, at *5; *Wong*, 732

F.3d at 1033, 1038, 1049 (holding that § 2401(b) is not

jurisdictional and that equitable tolling is available to FTCA

claimants).

"'Generally, a litigant seeking equitable tolling bears

the burden of establishing two elements: (1) that he has been

pursuing his rights diligently, and (2) that some extraordinary

circumstances stood in his way.'"  *Credit Suisse Sec.(USA) LLC v.

Simmonds*, 132 S. Ct. 1414, 1419 (2012) (quoting *Pace v.

DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Wong*, 732 F.3d at 1033-

34; *see also Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

---

[7] "August 2012" is actually twenty-eight months, or two and
a half years, after his accident.

13

## 1. *Mental Impairment*

A sufficiently serious mental impediment may constitute an "extraordinary circumstance" beyond a prisoner's control for purposes of equitable tolling. *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (Ninth Circuit has "long recognized equitable tolling in the context of a petitioner's mental illness"). In the analogous context of a habeas corpus petition, a prisoner seeking equitable tolling because of mental impairment must meet a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099–1100 (citations, footnote, and original emphasis omitted).

> To evaluate an equitable tolling claim,
>
> the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during

14

the filing period that would entitle him to
an evidentiary hearing; (2) determine, after
considering the record, whether the
petitioner satisfied his burden that he was
in fact mentally impaired; (3) determine
whether the petitioner's mental impairment
made it impossible to timely file on his own;
and (4) consider whether the circumstances
demonstrate the petitioner was otherwise
diligent in attempting to comply with the
filing requirements.

*Id.* at 1100-01.  Regarding diligence, "the petitioner must

diligently seek assistance and exploit whatever assistance is

reasonably available."  *Id.* at 1101.  "[A] petitioner's mental

impairment might justify equitable tolling if it interferes with

the ability to understand the need for assistance, the ability to

secure it, or the ability to cooperate with or monitor assistance

the petitioner does secure.  The petitioner therefore always

remains accountable for diligence in pursuing his or her rights."

*Id.* at 1100.

### 2.    *Language Impediment*

A Spanish-speaking pro se prisoner's lack of access to

Spanish-language legal materials or a translator may be grounds

for equitable tolling.  *See Mendoza v. Carey*, 449 F.3d 1065, 1067

(9th Cir. 2006) (remanding to district court for evidentiary

hearing to determine whether equitable tolling was warranted when

petitioner's alleged inability to file timely was caused by lack

of access to legal materials in Spanish or to translator).

However, "a non-English-speaking petitioner seeking equitable

tolling must, *at a minimum*, demonstrate that during the running

of the . . . time limitation, he was unable, despite diligent

efforts, to procure either legal materials in his own language or

translation assistance from an inmate, library personnel, or

other source." *Id.*, 449 F.3d at 1170 (emphasis added).

**C.      Analysis**

It is undisputed that Benitez was aware of his injury

and its cause on March 7, 2010.  He also admits he was aware that

he received treatment for the fall thereafter.  *See* Pl's Request

for Reconsideration, Doc. 10-8, PageID #87 (stating, "[a]fter the

incident in March 2010, I continued treatment and felt better.").

The issue is whether Benitez was prevented from filing an FTCA

administrative claim within two years of his injury because he

was over-medicated by prison medical providers, and thus mentally

impaired, and because he was not proficient in English.  It is

Benitez's burden to prove both elements of the equitable tolling

doctrine: extraordinary circumstances preventing timely filing,

and his own diligence.  The United States is not required to

disprove his claimed entitlement to equitable tolling.  Although

the court accepts that Benitez makes a nonfrivolous claim

regarding his mental impairment, and possibly his lack of English

proficiency, the record and Benitez's unsupported conclusions are

insufficient to meet his burden of showing entitlement to

equitable tolling for his claim.

### 1. Benitez's Attorney's Letters

On June 2 and August 9, 2010, Benitez's attorney wrote the FDC-Honolulu Medical Department on Benitez's behalf to register Benitez's concerns regarding his medical treatment. Pl.'s Exs., Doc. 16-1, PageID #121-22. Benitez had "express[ed] concern" to his attorney that he was prescribed "as many as 15 pills, twice a day, for his seizure condition," and his medication was "not like those he received from the physicians who treated him on Kauai." *Id.* Benitez also told his attorney that FDC-Honolulu medical staff ignored his complaints regarding chronic pain and swelling in his joints. At his attorney's recommendation, Benitez completed a medical release and submitted it to FDC-Honolulu so that prison medical staff could confer with his private physicians. *Id.*, PageID #122.

These letters show that Benitez was aware of his treatment and medical needs during the months immediately following his accident. He actively sought his attorney's assistance to intercede with FDC-Honolulu medical personnel for more effective dosages for his seizures and other medical treatments. Despite his alleged language difficulties and over-medication, he was able to complete forms and follow directions and advice. Benitez therefore cannot be said to have been unable to understand the need to file an administrative tort claim or to have lacked the ability to prepare such a claim himself or to

17

seek assistance in filing a claim during this period.  *See Bills*,
628 F.3d 1092.

## 2.    *Benitez's Declarations in CR. No. 10-00091 JMS*

This court's independent review of Benitez's federal
criminal proceeding further reveals no basis for finding that he
was mentally incompetent or unable to understand English between
at least March and December 2010.  Neither Benitez nor his
attorney ever requested a Spanish interpreter during his criminal
proceedings.  *See generally*, Cr. No. 10-00091 JMS.  Benitez
appeared at his initial appearance, detention hearing,
arraignment, two change of plea hearings, and sentencing without
requesting an interpreter.  Then, on September 2, 2010, six
months after his accident, Benitez stated in English, under oath,
that the medication he was taking for his seizure condition did
not impair his ability to make decisions or understand his
present circumstances.  *See* Cr. No. 10-00091 JMS, Tr. of
Withdrawal of Guilty Plea, September 2, 2010, Doc. No. 157,
PageID #512-13.  Benitez's attorney also affirmed that, to his
knowledge, Benitez was competent to enter a valid guilty plea.
*Id.; see United States v. Rivera*, 517 Fed. Appx. 596, 2013 WL
1849213, at *2 (9th Cir. 2013) (finding attorney's assurances
that the defendant was legally competent at sentencing
significant in evaluating a district court's need to conduct a
sua sponte competency evaluation at sentencing).  Benitez's

18

contemporaneous statements made in English regarding his competency directly contradict his claims that he was not "conscious of reality and time," between March 7 and, at a minimum, September 2010, and show his understanding of English. Pl.'s Response, Doc. No. 16, PageID #118.

Benitez did not challenge the United States Probation Office's presentence finding that he had lived and worked in the United States for more than thirty years, suggesting he understood English.[8] At his sentencing hearing on December 20, 2010, no evidence was presented suggesting that Benitez was incompetent to proceed or could not understand the proceeding. *Id.*, Doc. No. 120. Benitez did not appeal his conviction or challenge the knowing and voluntary nature of his guilty plea, either for mental incompetence or for his alleged inability to understand English.[9]

In Benitez's Rule 35 Motion for Specific Performance, filed on September 9, 2013, he submitted evidence showing that he

---

[8] Although this document and Benitez's Rule 35 Motion are sealed, the court sees no reason to think that a general reference to these documents, which are part of Benitez's BOP and criminal records, will jeopardize Benitez or any ongoing investigation.

[9] Further, a finding *here* that Benitez was mentally incompetent or could not understand English when he pled guilty is barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) (barring claims in civil action that call into question the legality of a criminal conviction, unless the conviction or sentence has been subsequently resolved in plaintiff's favor).

is considered English proficient and attained a GED or high
school diploma.  He also participated in extensive educational
and vocational training between September 2010 and July 2013.
SEALED, Doc. No. 160.  This training included courses in
Literature, Spanish, Business, Mathematics, English as a Second
Language, and Ethics.  Benitez does not explain how he was able
to diligently attend courses and attain hundreds of hours of
credit while being allegedly so mentally incompetent that he
could not rationally understand the need to file an
administrative tort claim or "diligently seek assistance [to file
a tort claim] and exploit whatever assistance is reasonably
available."  *Bills*, 628 F.3d at 1101.

### 3.    *Benitez's Medical Records*

Finally, Benitez's medical records fail to support his
assertion that he was over-medicated to the point of mental
incompetence for almost two years after his injury.  *See* Pl.'s
Exs., Doc. No.16-1, PageID #123-34; Doc. Nos. 25-1 to 25-5.
Instead, they show that he was taking anti-seizure and other
medications before and after his incarceration, and that the
course of his treatment and medication dosage evolved over time
in response to his needs.  They also show that he discussed his
seizure treatment and other medical issues with prison medical
care providers many times, and that they were responsive to his
desire to control his seizures and "decrease his medication

burden." *See, e.g.*, Doc. Nos. 25-1 through 25-5.

On February 15, 2011, less than two months after sentencing, FDC-Honolulu physician, James Pelton, M.D., opined that Benitez had had "a seizure disorder for the past 5 years . . . with head injury. His seizures have been difficult to control, however he is currently well controlled on 3 medications for the past year. His last seizure was in 3/20/2010. Before that, they were about monthly. . . . He has good energy level and interest in his daily activities." *Id.*, Doc. No. 25-3, PageID #166.

Benitez's medical records show that he requested eyeglasses at the medical clinic on September 24, 2010, and explained that his prescription had been too mild previously for him to qualify for eyeglasses free of charge. He requested an eye examination on May 23 and July 2, 2012, and was examined by an optometrist on August 10, 2012. *See* Pl.'s Ex., Doc. No. 16-1, PageId #121, 126, 127. He received eyeglasses thereafter. *Id.*, PageID #131. While this may support his claim that he was experiencing vision problems after his accident, it does not prove that he was unaware of his injury of March 7, 2010, or mentally incapable of filing an administrative tort claim.

Importantly, Benitez submits no expert opinion that he was over-medicated or mentally incompetent to a degree that prevented him from recognizing his injury and its cause and

timely filing a claim. *See McCall Wyo. Attorney Gen.*, 339 Fed. Appx. 848, 850, 2009 WL 1803281, at *2 (10th Cir. June 25, 2009) (denying equitable tolling on prisoner's assertion that his medication rendered him mentally incompetent, when he failed to explain how the medication "prevented him from bringing the claim," and observing that "mere allegations that [petitioner] was under the influence of medication" are insufficient to establish an extraordinary circumstance); *Robison v. Hinkle*, 610 F. Supp. 2d 533, 542-43 (E.D. Va. 2009) (denying equitable tolling because no documentation supported petitioner's contention that his medications' side effects incapacitated him); *Patterson v. Adams*, 2009 WL 1774296, at *3 (C.D. Cal. June 22, 2009) (finding equitable tolling unwarranted, because prisoner "presented no evidence showing he experienced any side effects from . . . medication").

Benitez's assertions regarding his alleged mental incompetence and inability to understand English are insufficient to carry his burden of showing that he was prevented him from pursuing timely FTCA administrative tort claim relief. It is irrelevant that the medications Benitez took have the potential to cause confusion, although Benitez also fails to provide evidence supporting this conclusion. Benitez must also establish that his medication actually impaired his ability to rationally, factually, and personally understand his need to file a claim, or

prevented him from seeking assistance in doing so.

Benitez does not show that he is entitled to equitable tolling of the two-year statute of limitation governing the filing of an administrative tort claim under the FTCA. *See* 28 U.S.C. § 2401(b). This FTCA action is, therefore, "forever barred." *Gallardo,* 2014 WL 2462804, at *4.

### III. CONCLUSION

1. The United States' Motion to Dismiss for Benitez's failure to exhaust administrative tort remedies under the FTCA is GRANTED. Benitez's Complaint and action are DISMISSED.

2. The Clerk of Court SHALL enter judgment and close the case file.

3. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that an appeal of this decision would not be taken in good faith.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 24, 2014.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Benitez v. United States*, 1:13-cv-00668 SOM/RLP; psas/Exh Ords/2014/Benitez 13-668; J:\Denise's Draft Orders\SOM\Benitez 13-668 som (dsm ftca no bop exh).wpd